FILED
United States Court of Appeals
Tenth Circuit

December 7, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CASEY CHESTER ROBERTS,

      Defendant-Appellant.

No. 17-4021
(D. Utah)
(D.C. No. 2:15-CR-00161-TS-1)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

This appeal grew out of a traffic stop. A highway-patrol trooper stopped Mr. Casey Roberts for a broken tail light and discovered contraband in the vehicle. Mr. Roberts unsuccessfully moved to suppress evidence of the contraband, arguing that the trooper lacked reasonable suspicion for the traffic stop. We disagree.

The parties agree on most of the underlying facts. Two highway patrol troopers (Trooper Neighbor and Trooper Harwood) thought that Mr.

---

[*]   Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Roberts had a broken tail light and followed him in separate cars. This was the sequence of cars:



After following for about a minute, Trooper Harwood thought that he saw the tail light illuminate, so he turned his car around and drove in the opposite direction. When he did, Trooper Neighbor moved directly behind Mr. Roberts, following for about eight seconds, which is captured on videotape. After about eight seconds, Trooper Neighbor initiated a traffic stop for a broken tail light.[1] Mr. Roberts challenged the stop on the ground that Trooper Neighbor could not have seen whether the tail light was out.

The district court rejected this challenge, finding that Trooper Neighbor had reasonable suspicion for the traffic stop. We review this finding under the clear-error standard. *United States v. Beckstead*, 500 F.3d 1154, 1162 (10th Cir. 2007); *see United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010) (stating that the clear-error standard applies to the review of factual findings "even when . . . there is video tape of the [traffic] stop"). To apply this standard, we view the evidence in the light most favorable to the government. *Beckstead*, 500 F.3d at 1162. We can

---

[1] Under Utah law, cars can be driven only if their lights are in proper condition. Utah Code Ann. § 41-6a-1601(1)(a)(ii).

reverse only if the district court's finding lacks any factual support or if the entirety of the evidence definitely and firmly convinces us that a mistake has been made. *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013).

Viewing the evidence in the light most favorable to the government, we conclude that the district court did not commit clear error. The district court could base its finding of reasonable suspicion on

- testimony by Trooper Neighbor and Trooper Harwood,

- testimony by an employee of a tow company, and

- testing of the tail lights.

Trooper Neighbor testified that he could see the tail lights illuminate several times on the passenger's side and the middle, but each time, the tail light on the driver's side remained dark or dim. Trooper Harwood also testified that he had initially thought that the tail light on the driver's side was out. But he changed his mind, thinking that the tail light was working even though it remained "extremely dim." R. vol. 1, at 48.

After the stop, Mr. Roberts's car was driven to an impound lot. The car was followed by Ms. Tonya Thomas, who worked for a towing company. She too observed that the tail light on the driver's side was not working.

This observation was confirmed by testing of the tail lights by Trooper Neighbor and Ms. Thomas. During the traffic stop, Trooper

Neighbor told Mr. Roberts to tap his brakes to see if the tail lights worked. At first, the tail light on the driver's side didn't appear to work. But then Trooper Neighbor shielded his eyes from the sun and saw a faint glow inside the driver's tail light. Similarly, Ms. Thomas checked the tail lights when the car was at the impound lot. She confirmed that the tail light sometimes worked and sometimes didn't.

Mr. Roberts contends that Trooper Neighbor could not have known whether the tail light on the driver side was working. For this contention, Mr. Roberts states that

- Trooper Neighbor had been behind Trooper Harwood and

- videotape of the pursuit does not show a broken tail light.

We must uphold the district court's finding unless it is "blatantly contradicted" by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

The video evidence provides little help, for it shows only about eight seconds of the pursuit and does not necessarily show what Trooper Neighbor could have seen. For example, Trooper Neighbor testified that he had been able to see Mr. Roberts's tail lights as the two cars went uphill, but the videotape does not show the uphill portion of the pursuit. And we cannot tell from the videotape whether Trooper Neighbor could have seen Mr. Roberts's tail lights illuminate during the eight-second pursuit, for the videotape does not necessarily capture the entirety of Trooper Neighbor's

-4-

field of vision.[2] Thus, the videotape is inconclusive, failing to show whether Mr. Roberts's tail lights would have been visible to Trooper Neighbor. In these circumstances, we do not regard the district court's finding as clearly erroneous.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

[2] Mr. Roberts testified that he had not used his brakes during this eight-second clip. But the district court could reasonably decline to credit this testimony. *La Resolana Architects v. Reno, Inc.*, 555 F.3d 1171, 1180 (10th Cir. 2009) (noting that a district court does not commit clear error simply by choosing to credit the testimony of one witness over another).